|  |  |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | <u>**NOT FOR PUBLICATION**</u> |

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>       Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>       Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>       Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC, and the Chapter 7 Estate of Bernard L. Madoff,<br><br>       Plaintiff,<br><br>v.<br><br>CACEIS BANK LUXEMBOURG and CACEIS BANK.,<br><br>       Defendants. | Adv. Pro. No. 11-02758 (CGM) |

**MEMORANDUM DECISION DENYING DEFENDANTS' MOTION TO DISMISS**

**A P P E A R A N C E S :**

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rockefeller Center
1270 Avenue of the Americas, Suite 2210
New York, New York 10020
 By: Matthew B. Lunn
    Michael S. Neiburg
    Justin P. Duda
    Christopher M. Lambe

*Counsel for Defendant Caceis Bank Luxembourg and Caceis Bank*
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, New York 10019
By:    Daniel Schimmel
        Shrutih Tewarie
        James S. Fullmer

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendants', Caceis Bank Luxembourg ("CACEIS Bank Lux") and Caceis Bank ("CACEIS Bank France") (collectively "CACEIS" or "Defendants"), motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly consisting of BLMIS customer property. Defendants seek dismissal for failure to allege that CACEIS were mediate or immediate transferees and for failing to allege CACEIS received BLMIS customer property. Defendants raise the "safe harbor" and "good faith" defenses. Defendants also request the Court enter a "mere conduit protocol." For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision. Personal jurisdiction has been contested by this Defendant and will be discussed *infra*.

## **Background**

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on October 6, 2011. (Compl., ECF[1] No. 1). The Trustee filed an amended complaint on June 30, 2023 ("Amended Complaint") (Am. Compl., ECF No. 131). Via the Amended Complaint, the Trustee seeks to recover $77,633,803 in subsequent transfers made to CACEIS Bank Lux and $33,213,014 in subsequent transfers made to Caceis Bank France. (*Id.* ¶ 2). The subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry"), Fairfield Sigma Limited ("Fairfield Simga"), and Harley International ("Harley") (collectively, the "Feeder Funds") (*Id.* ¶ 2). Fairfield Sentry and Harley are considered "Feeder Funds" of BLMIS because the intention of the funds was to invest in BLMIS. (*Id.* ¶¶ 2, 6). The Trustee has provided a table with a breakdown of the funds subsequently transferred to each Defendant:

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 11-02758-cgm.

|  | **CACEIS Bank** | **CACEIS Bank Luxembourg** |
|---|---|---|
| **Fairfield Sentry** | $33,213,014 | $35,759,150 |
| **Fairfield Sigma** | N/A | $35,824,693 |
| **Harley** | N/A | $6,049,960 |
| **Total** | **$33,213,014** | **$77,633,803** |

(*Id.* ¶ 3).

CACEIS Bank Lux and CACEIS Bank France are *sociétés anonyme* maintaining places of business in Luxembourg and France, respectively. (*Id.* ¶ 52). CACEIS France was formed in 2005 as a joint venture comprised of Credit Agricole Investor Services Bank and IXIS Investor Services. (*Id.*). CACEIS Lux was a wholly owned subsidiary of CACEIS Bank France during the relevant period.

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. (*Id.* ¶ 94). In 2011, the Trustee settled with Fairfield Sentry and Fairfield Sigma. (*Id.* ¶ 95). As part of their settlement, Fairfield Sentry and Fairfield Sigma consented to judgments in the amounts of $3.054 billion and $752.3 million, respectively. (Consent Js., 09-01239-cgm, ECF Nos. 109–10). The Trustee then commenced a number of adversary proceedings against subsequent transferees, like Defendants, to recover the missing customer property. The Trustee alleges that Fairfield Sentry transferred $33,213,014 to CACEIS Bank France and $35,759,150 to CACEIS Bank Lux. (Am. Compl. ¶ 3, ECF No. 131). The Trustee alleges Fairfield Sigma transferred $35,824,693 to CACEIS Bank Lux. (*Id.*).

The Trustee also filed an adversary proceeding against Harley to avoid and recover fraudulent transfers of customer property following BLMIS's collapse. (*Id.* ¶ 111); (*See* Compl., Picard v. Harley Int'l (Cayman) Ltd., Adv. Pro. No. 09-01187, ECF No. 1 (the "Harley

Complaint")). In November 2010, on a motion for default and summary judgment, the Court entered judgment against Harley avoiding the initial two-year transfers in the amount of $1,066,800,000. (Am. Compl. ¶ 115, ECF No. 104); (Adv. Pro. No. 09-01187, Order, ECF No. 15). The Trustee has not yet recovered any of the initial transfers from Harley. (Am. Compl. ¶ 115). The Trustee commenced this adversary proceeding following entry of judgment against Harley in order to recover the customer property. The Trustee alleges that Harley transferred $6,049,960 of customer property to CACEIS Bank Lux. (*Id.* ¶ 92).

In their motion to dismiss, Defendants argue that the Trustee has failed to allege that Caceis was a mediate or immediate transferee and has failed to allege Caceis received BLMIS customer property. Defendants raise the "safe harbor" and "good faith" defenses and request the Court enter a so-called "conduit protocol." The Trustee opposes the motion to dismiss. The parties waived oral arguments on the motion and rely on the papers submitted. (Stip. and Order, ECF No. 143). For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## Discussion

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for

enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679. "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover approximately $33,213,014 and $35,759,150 in subsequent transfers made to CACEIS Bank France and CACEIS Bank Lux, respectively, by Fairfield Sentry. (Am. Compl. ¶ 101, ECF No. 131). The Trustee is seeking to recover approximately $6,049,960 in subsequent transfers made to CACEIS Bank Lux by Harley. (*Id*. ¶ 116).

**Mere Conduit**

Defendants argue that the Trustee has failed to allege that Defendants are mediate or immediate transferees of any initial transferee. Defendants argue that they are "mere conduits" and not subsequent transferees because the Trustee did not allege facts suggesting that Defendants held legal title to the money it received from the Feeder Funds or acted with discretion for using transfers it received. (Def.'s Mem. L. 10–14, ECF No. 135). The Court of Appeals for the Second Circuit held in *In re Finley* that a financial intermediary is not an "initial transferee" for purposes of § 550. *Finley v. Alexander (In re Finley)*, 130 F.3d 52, 57 (2d Cir. 1997). Some courts have applied the "dominion or control" test to subsequent transferees. *See Miller v. Porush (In re Stratton Oakmont, Inc.)*, 234 B.R. 293, 313 n.9 (Bankr. S.D.N.Y. 1999) (applying the dominion and control test to subsequent transferees) (citing *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 894 (7th Cir. 1988)).

It is not "beyond doubt" that the Defendants were "mere conduits." The Trustee has alleged that Defendants were transferees of Fairfield Sentry, Fairfield Sigma, and Harley; the Trusree has not alleged that CACEIS's client were transferees of the Funds. (Compl. ¶¶ 124, 129, 134). Defendants signed subscription agreements with Fairfield Sentry, Fairfield Sigma, and Harley, not their clients. (*Id.* ¶¶ 61–62. 78). The Trustee has plausibly alleged that Defendants exercised dominion and control over the investments and redemption of BLMIS customer property. Defendants are free to plead and prove otherwise at a later stage of litigation. *See Enron Corp. v. J.P. Morgan Securities Inc.* (*In re Enron Corp.*), 361 B.R. 36, 49 (Bankr. S.D.N.Y. 2006) (stating that the burden of proof is on the defendant asserting a mere conduit defense); *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) ("[T]he mere conduit defense is an affirmative defense that must be proved by the defendant seeking its protection.").

**Mere Conduit Protocol**

Defendants request the Court enter a "conduit protocol" to provide an opportunity, before formal discovery, to determine whether Defendants are transferees or mere conduits as to each transfer. Courts in this district have allowed conduit protocols to establish a defendant's role with respect to each transfer. In *Kirschner v. Fitzsimmons* (*In re Tribune Co. Fraudulent Conveyance Litig.*), the district court allowed the parties to stipulate to a conduit protocol in which the parties agreed upon a definition of "mere conduit" and a process to determine whether any given involved entity held that status. (*See* Conduit Protocol ¶ 1–3, *Kirschner v. Fitzsimmons* (*In re Tribune Co. Fraudulent Conveyance Litig.*), No. 12-cv-02652 (S.D.N.Y. April 24, 2014). According to those procedures, the revelation that a defendant was a mere conduit would prompt the Plaintiff to voluntarily dismiss the defendant from the suit. (*Id.* ¶ 4). In *Weisfelner v. CIBC World Markets* (*In re Lyondell Chem Co.*), the court so ordered a similar stipulation. (*See Weisfelner v. CIBC World Markets (In re Lyondell Chem Co.*), No. 10-04609 (Bankr. S.D.N.Y. Dec. 4, 2014), ECF No. 2124). In both instances, the parties stipulated to such protocol and the court simply endorsed it. The parties have presented this court with no such stipulation, and the Trustee has explicitly stated that he neither supports nor consents to a conduit protocol. (Pl.'s Mem. 21–22, ECF No. 140). CACEIS has presented no legal grounds by which the Court can compel a non-consenting party to enter into such a protocol. Were one to exist, the Court sees no practical reasons for doing so. The parties may engage in discovery on this issue along with discovery on all other factual issues. The Court declines to order the requested protocol.

**BLMIS Customer Property**

The Trustee has alleged that "BLMIS transferred $2,895,000,000 to Fairfield Sentry during the six years preceding the [f]iling [d]ate" and "BLMIS transferred at least $1,580,000,000 to Fairfield Sentry during the two years preceding the [f]iling [d]ate." (Am. Compl. ¶¶ 99–100). The Trustee has alleged that "Fairfield Sentry subsequently transferred a portion of the Fairfield Sentry Initial Transfers to CACEIS Bank France and CACEIS Bank Lux . . . . [T]he subsequent transfers from Fairfield Sentry to CACEIS Bank France total $33,213,014." (*Id*. ¶ 101). The Trustee has alleged that Fairfield Sentry transferred at least $789,152,864 directly to Fairfield Sigma, which transferred at least $33,824,693 to CACEIS Bank Lux. (*Id*. ¶ 106). The Trustee has alleged "[d]uring the six years preceding the [filing [d]ate, BLMIS made transfers to Harley of $1,072,800,000" and that "[b]ased on the Trustee's investigation to date, the subsequent transfers from Harley to CACEIS Bank Lux total $6,049,960." (*Id.* ¶¶ 112, 116).

Exhibits E, F, H, and K to the Amended Complaint provides Defendants with the exact date and amount of each transfer the Trustee is seeking to recover. These exhibits provide Defendants with the "who, when, and how much" of each transfer. *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

In order to determine how the Feeder Funds spent the billions of dollars they received from BLMIS, this Court would need to review financial documents in order to trace the monies to all of Feeder Funds principals, insiders, creditors, and customers. Undoubtedly, the Court will trace and calculate how the Feeder Funds spent its BLMIS (and any non-BLMIS) funds at a later stage of litigation. At this stage, the Trustee need only assert allegations that make it seem plausible that the Defendants received BLMIS monies.

Defendants argue that it is a simple matter of mathematics that Fairfield Sentry must have received monies from a source other than BLMIS. (Def.'s Mem. L. 15, ECF No. 135). The Fairfield Complaint, which is incorporated by reference into this, alleges that Fairfield Sentry was required to invest 95% of its assets in BLMIS. (Am. Compl. ¶ 56; see also Fairfield Compl. ¶¶ 89, 91) ("From the beginning, to comport with Madoff's requirement for BLMIS Feeder Funds, Fairfield Sentry ceded control of not only its investment decisions, but also the custody of its assets, to BLMIS."). The Amended Complaint alleges that Harley invested all or substantially all of its assets with BLMIS in New York. (Am. Compl. ¶ 57). The Amended Complaint plausibly alleges that the Feeder Funds did not have any assets that were not customer property. In this case, the Trustee is not seeking to collect $5 billion from Defendants. He is seeking approximately $110,846,817, which easily could come from the $3 billion Fairfield Sentry received from BLMIS or the $1.7 million Harley received from BLMIS. If the Court were to accept Defendant's argument, it would need to do one of two things: 1) dismiss all of the Trustee's subsequent transfer claims in all of the adversary proceedings since the Court has no idea which transfers came from BLMIS customer property; or 2) hold a pre-discovery trial on all of the subsequent transfers actions to determine which transfers were made from the $3 billion of BLMIS customer property and which were not. The Court is simply not willing to have such a trial at this stage of litigation.

Taking all allegations as true and reading them in a light most favorable to the Trustee, the Amended Complaint plausibly pleads that Defendants received customer property because the Feeder Funds did not have other property to give. The calculation of the Feeder Funds' property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation.

**The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers**

Defendant has raised the "safe harbor" defense, found in § 546(e), to the Trustee's allegations. (Def.'s Mem. L. 17–19, ECF No. 135). Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. § 546(e). "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original). Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those funds. *Picard v. Fairfield Inv. Fund (In re BLMIS)*, No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

In *Fishman*, the Court of Appeals for the Second Circuit determined that, in many of the Trustee's avoidance actions, § 546(e) applied because BLMIS' transfers to its customers qualified as payments made "in connection with" securities contracts between BLMIS and its customers. *See Picard v. Ida Fishman Recoverable Trust (In re BLMIS)*, 773 F.3d 411, 422 (2d Cir. 2014). The safe harbor does not apply, by its plain terms, to transfers where the transferee is complicit in BLMIS' fraud. *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022). This is because "any transferee who knew the transfers it received from Madoff Securities contained only stolen

proceeds also knew those transfers were neither settlement payments [n]or transfers in connection with a security agreement" and therefore, § 546(e) cannot apply.[2]  *Id.*

> The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors.  If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account.  In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law.

*Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds*, *Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021)).  By holding that the affirmative defense provided by § 546(e) is not applicable in situations such as the one alleged here, "sham" securities contracts do not prevent the Trustee from clawing back complicit parties' ill-gotten gains.  The district court has already determined that "those defendants who claim the protections of Section 546(e) through a Madoff Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied." *Cohmad*, No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013); *see also Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022) ("[I]n circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) d[oes] not apply as a matter of its express terms.").

On the issue of the safe harbor, the Court adopts the district court's reasoning in *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767

---

[2] While this is sometimes referred to as the "knowledge exception" to the safe harbor, "*Cohmad* did not carve out a textual but equitable exception to an otherwise applicable Section 546(e) defense; rather, it simply concluded that, in circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) did not apply as a matter of its express terms." *Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)*, No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).

(S.D.N.Y. Nov. 3, 2022). The Trustee has alleged that the Feeder Funds knew the payments it received from BLMIS were neither settlement payments nor payments in connection with a securities contract. "The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors. If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds*, *Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021).

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds its holding consistent with dicta set forth by the Court of Appeals for the Second Circuit. *See Picard v. Ida Fishman Revocable Trust (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e).").

As to Fairfield Sentry, this Court has already determined that the Fairfield Complaint contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion. *See Picard v. Fairfield Inv. Fund (In re BLMIS)*, No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee

has pled [actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); *Id.* ¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at BLMIS"); *Id.* ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS"); *Id.* ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); *Id.* ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); *Id.* ¶ 325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had actual knowledge of the fraud at BLMIS"); *Id.* ¶ 327 ("Fairfield International Managers had actual knowledge of the fraud at BLMIS"); *Id.* ¶ 328 ("FG Capital had actual knowledge of the fraud at BLMIS"); *Id.* ¶ 329 ("Share Management had actual knowledge of the fraud at BLMIS"); *Id.* ¶ 9 ("It is inescapable that FGG partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the result of the split strike conversion strategy (the 'SSC Strategy'). They knew BLMIS's equities and options trading volumes were impossible. They knew that BLMIS reported impossible, out-of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options counterparties. They knew their clients and potential clients raised numerous due diligence questions they would not and could not satisfactorily answer. They knew Madoff would refuse to provide them with honest answers to due diligence questions because it would confirm the details of his fraud. They knew Madoff lied about whether he traded options over the counter or through the exchange. They knew they lied to clients about BLMIS's practices in order to keep

the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's direction.").

As to the Harley, the Trustee has plead, by adopting by reference the entirety of the complaint filed against Harley in adversary proceeding 09-01187 ("Harley Complaint"), and through additional allegations in the Amended Complaint, that Harley had actual knowledge of fraud. (Am. Compl. ¶ 111, ECF No. 131). *See* Harley Compl. ¶ 2 ("Harley knew or should have known that its account statements at BLMIS did not reflect legitimate trading activity and that Madoff was engaged in fraud"); *Id*. ("In just the 90 days prior to Madoff's public disclosure of the Ponzi scheme, Defendant Harley withdrew $425 million from BLMIS, which it knew or should have known was non-existent principal and other investors' money"); *Id.* ¶ 36 ("Defendant knew or should have known that Madoff's IA Business was predicated on fraud"); *Id.* ¶ 36(i) ("Defendant knew or should have known that the option trading volumes reported by BLMIS were impossible if exchange-traded.").

"In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021). This Court determined that the Fairfield Complaint is replete with allegations demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities. *See Picard v. Fairfield Inv. Fund (In re BLMIS)*, No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021). The Trustee's allegations in the Fairfield Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

**The Safe Harbor cannot be used to defeat a subsequent transfer**

The safe harbor cannot be used to prevent the Trustee from avoiding the subsequent transfer between the Feeder Funds and Defendants on account of the securities contracts between the Feeder Funds and Defendants.

The safe harbor is not applicable to subsequent transfers. "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections). Since there must be an initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned. The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not "avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018).

**Good Faith**

The District Court recently explained that good faith is a fact-intensive inquiry that almost always requires a trial: "The Second Circuit made clear in its decision in [*Picard v.*] *Citibank, N.A. (In re BLMIS)*, 12 F.4th 171 (2d Cir. 2021), *cert. denied* No. 21-1059 (Feb. 28, 2022)] that the inquiry notice standard requires a 'fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes into account the disparate circumstances of differently-situated transferees.'" *In re BLMIS, LLC*, Dec. & Order, 20-cv-02586(CM) (May 2, 2022). And that "such a fact-based determination can only be made based on the entirety of the factual record after discovery . . . ." *Id.* (internal quotation omitted).

The burden of proving good faith falls squarely on Defendants and this Court cannot make a determination on Defendant's affirmative defense until after a fact-intensive inquiry. Discovery is required on this issue.

The "value" that a subsequent transferee must provide is "merely consideration sufficient to support a simple contract, analogous to the 'value' required under state law to achieve the status of a bona fide purchaser for value." *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 37 (Bankr. S.D.N.Y. 2016) (citation omitted); *accord Enron Corp. v. Ave. Special Situations Fund II, L.P. (In re Enron Corp.)*, 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005). In addition, the "value" element under § 550(b)(1) looks to what the transferee gave up rather than what the transferor received. The Amended Complaint contains no mention of CACEIS exchanging shares for consideration. Therefore, the "value" defense is not asserted on the face of the Amended Complaint.

Defendants argue that the payments they received were given in exchange for the redemption of shares in the Feeder Funds. If Defendants knew at the time they redeemed its shares that the shares were worthless, then they did not receive the subsequent transfer funds "for value" as is required under § 550. *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, 596 B.R. 275, 301 (Bankr. S.D.N.Y. 2018), *aff'd sub nom. Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022) ("The only exception concerns the Knowledge Defendants that received redemption payments with the knowledge that the NAV was wrong. In those circumstances, the Liquidators may seek to impose a constructive trust."). It has not yet been determined whether Defendants knew if the shares they redeemed from the Feeder Funds had value.

"Value" is Defendants' burden to plead and prove. *Picard v. BNP Paribas S.A.* (In re BLMIS), 594 B.R. 167, 198 (Bankr. S.D.N.Y. 2018). Whether the Defendants gave value is a question of fact to be resolved either at the summary judgment stage or at trial. *Picard v. Fairfield Inv. Fund* (In re BLMIS), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021).

Good faith is linked with whether one had knowledge of the voidability of the transfer. *Picard v. Citibank, N.A.* (In re BLMIS), 12 F.4th 171, 189 (2d Cir. 2021) ("[A] transferee does not act in good faith when he has sufficient actual knowledge to place him on inquiry notice of the debtor's possible insolvency."), *cert. denied sub nom. Citibank, N.A. v. Picard*, 212 L. Ed. 2d 217, 142 S. Ct. 1209 (2022). Having determined that "good faith" cannot be found on the face of a complaint, the Court must deny the Defendants' motion on this element. Additionally, § 550(b)(1) provides a defense to recovery making lack of knowledge Defendants' burden to plead and prove. It is a fact-intensive inquiry that requires a three-step inquiry into 1) what Defendants subjectively knew; 2) "whether these facts put [them] on inquiry notice of the fraudulent purpose behind a transaction—that is, whether the facts the transferee[s] knew would have led a reasonable person in the[ir] position to conduct further inquiry into a debtor-transferor's possible fraud; and 3) whether "diligent inquiry by [Defendants] would have discovered the fraudulent purpose of the transfer." *Id.* at 192.

It is not appropriate for the Court to resolve these factual issues at this stage of the litigation.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss is denied. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to

Page **18** of **19**

chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: February 26, 2024**
**Poughkeepsie, New York**

**/s/ Cecelia G. Morris**
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**